## No. 9757.

INDUSTRIAL COMMISSION, ET AL. v. SHADOWEN.

1. INDUSTRIAL COMMISSION—*Findings of ·Fact,* by the commission as to the number of employees, of an employer may not, ordinarily, be disturbed by the court. It is error to set aside such finding when supported by the testimony of the employer himself.

2 *Who Within the Statute—Farm Laborers.* One who goes from farm to farm operating a thresher is not a farm laborer within the exception contained in clause III of sec. 4 of the Session Laws of 1915, c. 180.

*Error to Morgan District Court, Hon. L. C. Stephenson, Judge.*

Hon. VICTOR E. KEYES, Attorney General, Mr. JOHN S. FINE, Assistant and Mr. H. E. CURRAN, for plaintiffs in error.

Mr. WALTER S. COEN, for defendant in error.

Mr. Justice Scott delivered the opinion of the court.

THIS is a proceeding on error to the District Court of Morgan County in review of the findings and order of the Industrial Commission. M. E. Wolfe was an employee of the defendant in error, Shadowen, who was engaged in the business of operating a threshing machine. He proceeded from place to place, threshing the grain of farmers for hire. Wolfe was employed to operate the steam engine which supplied the power, and while so engaged, was severely injured. The Industrial Commission, upon a hearing, entered an order granting compensation. An appeal was taken to the District Court, where the order of the Commission was set aside, and where it was held that the claimant was not entitled to an award. This decision is before us for review.

The Commission found that both the employer and his employee were within the provisions of the Workmen's Compensation law and subject thereto. The court found specifically:

"(a)   That the plaintiff, Shadowen, was not an employer of more than three men regularly employed in his occupation of threshing grain.

(b)   That the men employed to pitch grain were casual employees.

(c)   That whatever employees were employed by the plaintiff were engaged in an agricultural pursuit and were exempt from the operation of the Workmen's Compensation Law.

(d)   That the plaintiff had not elected to come under the Workmen's Compensation Law, and was not bound thereby."

The question as to the number of employees in the employ of an employer is a question of fact to be determined by the commission, and under the statute, such finding may not ordinarily be disturbed by the court.

Shadowen himself testified that it required at least four men to operate the machine, though at times he had only three who went with the outfit and that he sometimes employed and paid additional men furnished by the farmers. His testimony upon this point is as follows:

"Q.   So the men pitching bundles made you have four employees?

A.   I had four men, yes, and at times five, enough to run the outfit.

Q.   How many men did you have at most at any one time in October?

A.   Eight.

Q.   During the season of 1918 was it your practice to furnish these men, or did you aim to run the outfit and let the farmers furnish all the labor outside of the three men?

A.   We calculated to run with the crew; sometimes we could not, and put on a pitcher.

Q.   Do you go into the season's work prepared to operate either way?

A.   Yes, sir."

He further testified that he paid all employees, whether secured by the farmer or not.

Upon the testimony of the employer himself, the commission was justified in finding that he was an employer of at least four men in his enterprise, and it was error for the court to disturb such finding.

It was held by the trial court that the employee was engaged in an° agricultural pursuit and therefore the employment was not within the statute. The exemption provided by the statute is as follows: "Provided, that any employer commencing business subsequent to August 1, 1915, may make his election not to become subject to the provisions of this act at any time prior to becoming an employer of four or more employees, in a common employment, exclusive of private domestic servants and farm and ranch laborers, by giving notice as above provided. Such employer may withdraw from the provisions of said sections of this act at the expiration of one year, in the manner provided by this act." It will be seen that the language of our statute does not state the exemption to relate to those "engaged in agricultural pursuits", as is the case of some other statutes, but does exclude from the operation of the law only "private domestic servants, and farm and ranch laborers." The theory of the law is that domestic service and farm and ranch labor are not to be classed as hazardous occupations, and for such reason are exempted from its operation.

The precise question was determined in *In re Boyer*, 117 N. E. (Ind.) 507, under a statute similar to our own in that farm laborers were exempted from the operation of the statute. The court there said: "In construing or interpreting an act of the Legislature the courts may take into consideration the general scope and purpose of the act and the condition that prevailed at the time of its passage. *Board, etc., v. Given*, 169 Ind. 468, 80 N. E. 965, 82 N. E. 918; *Hughes v. Indiana Union Traction Co.*, 57 Ind. App. 202, 105 N. E. 537, and cases cited. The purpose of the act, as indicated by its title, was to prevent industrial accidents, and to provide compensation and adequate medical and surgical care for those injured by accident while

engaged in industrial pursuits. It is manifest that the purpose of the act was to include within its benefits employes in all industrial pursuits, except those expressly mentioned in the exemption proviso, supra.

While the threshing of wheat may be a part of the work necessary to be done on the farm, the farmer himself rarely does it. On the contrary, he has it done by someone who is specially equipped with the machinery necessary to do this kind of work. Wheat threshing is a business or industrial pursuit in and of itself, entirely separate and independent of farming. We apprehend that it would not be contended that the employee of the miller employed in grinding the farmer's wheat into flour, while so engaged, is doing farm or agricultural work. Yet, as affecting the question of what relation the labor of their employes sustains to that of the farm, or agriculture in general, we can see little if any difference between the thresher and the miller. They each have to do with getting the farm product ready for consumption. It is true the miller's work is a step further removed from the farm, but each is engaged in a business separate from and independent of the farm, which requires machinery, equipment and labor peculiar to the business, and not ordinarily required on or incident to farm work. The only difference between the occupations which suggests itself to our minds as one that might be urged as affecting the question whether each of the occupations are separate and independent of that of the farm, and whether the labor of their employees, while engaged to assist in the operation of such respective businesses, is farm labor, is the fact that the thresher goes to the farm to thresh the farmer's wheat, while the farmer takes his wheat to the miller to get it ground into flour." The same reasoning is adhered to in *White v. Loades,* 178 N. Y. App. Div. 236, and reaffirmed in *Vincent v. Taylor,* 180 N. Y. App. Div. 818.

The Supreme Court of Oregon has given a still broader construction to the act. *Raney v. Industrial Commission,* 85 Ore. 199. The employer was a farmer and the opera-

tion of an ensilage cutter was but an incidental employment. It was there said: "The fact that the operation of an ensilage cutter may have been merely incidental to farming, the business in which plaintiff's employer, D. R. Tinnerstet, was generally engaged, did not make the management of the "feed mill" a less hazardous occupation. 5 Sutherland Dam. (5 Ed.), § 1376, p. 5185; *Wendt v. Industrial Ins. Com. of Washington*, 80 Wash. 111 (141 Pac. 311, 5 N. C. C. A. 790) ; *State v. Business Property Security Co.*, 87 Wash. 613 (152 Pac. 334)."

The contrary view is seemingly adopted by the Supreme Court of Iowa. *Slycord v. Horn*, 162 N. W. 249. Though the decision seems to have been largely based upon the language of the Iowa statute, in the matter of exemption from its operation, "engaged in agricultural pursuits", and the fact that the employee was employed as a farm laborer generally. That case was followed in the case of *State ex rel. Bykle v. District Court*, 168 N. W. (Minn.) 130.

We are of the opinion that the New York and Indiana cases are supported by the sounder reasoning and are more in harmony with the spirit and purpose of the Workmen's Compensation law. These cases are likewise supported by the greater weight of authority.

In this case the employee was not employed to labor on his employer's farm, but to operate the engine of a threshing machine engaged in traveling about the country threshing grain for those who desired such service; in other words, his employment was not merely incidental to general farm labor, and in our opinion the employer and the employee in such case are clearly within the operation of the statute.

The judgment is reversed with instructions to the District Court to enter an order affirming the finding and award of the Industrial Commission.

*Judgment Reversed.*

Garrigues, C. J., and Denison, J., concur.